

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 0 5 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER LANKFORD** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** 4:19-cv-619-JM |
| | § | |
| **PLUMERVILLE, ARKANSAS,** | § | |
| **CONWAY COUNTY, ARKANSAS,** | § | |
| **ALBERT DUVALL, Individually,** | § | |
| *Defendants.* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, CHRISTOPHER LANKFORD, Plaintiff, complaining of PLUMERVILLE, ARKANSAS, CONWAY COUNTY, ARKANSAS, and ALBERT DUVALL, Individually, and for cause of action will respectfully show unto the Court as follows:

### I.
### PARTIES

1.     Plaintiff Christopher Lankford is a resident of Conway County, Arkansas.

2.     Defendant Plumerville, Arkansas is a political subdivision of the State of Arkansas and may be served through the Plumerville Mayor, Ed Paladino, located at 303 W Main St, Plumerville, AR 72127 or wherever she may be found.

3.     Defendant Conway County, Arkansas is a political subdivision of the State of Arkansas located in the Eastern District of Arkansas. Conway County, Arkansas can be served through its County Judge, Jim Hart, located at 117 S. Moose St., Morrilton, AR 72110 wherever he may be found.

4.     Defendant Albert Duvall is an individual residing in Plumerville, Conway County, Arkansas and is an officer with the Plumerville Police Department and may be

This case assigned to District Judge___Moody___
and to Magistrate Judge___Ray___
PLAINTIFF'S ORIGINAL COMPLAINT                                                1 | P a g e

served at his place of employment at the Plumerville Police Department located at 101 W Church Street, Plumerville, Arkansas 72127 or wherever he may be found. Defendant Duvall is being sued in his Individual capacity.

## II.
## JURISDICTION AND VENUE

5.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.  Venue is proper in the Eastern District of Arkansas pursuant to 28 U.S.C. §1391 because the Defendants are domiciled and/or reside in the Eastern District of Arkansas, and all or a substantial part of the cause of action accrued in the Eastern District.

## III.
## FACTS AND ALLEGATIONS

6.      On October 10, 2018, Officer Taylor Dube of the Morrilton Police Department saw Plaintiff Christopher Lankford driving a motorcycle with a passenger on the back who was not wearing safety glasses.

7.      Officer Dube began following Mr. Lankford's motorcycle.

8.      Officer Dube asked over the radio if passengers needed to have safety glasses on when riding on a motorcycle and received an affirmative response.

9.      Officer Dube then stated over the radio that he was going to initiate a traffic stop on the motorcycle.

10.      When Mr. Lankford came to a stop sign, his passenger jumped off the motorcycle and ran away.

11.      Mr. Lankford then drove off on his motorcycle.

12.     Officer Dube turned on his overhead lights and siren and began a pursuit of Mr. Lankford.[1]

13.     The pursuit lasted only about two minutes, the majority of which was located on Highway 64.

14.     The pursuit started on Will Street.

15.     Mr. Lankford did not pass any pedestrians or other vehicles on Will Street.

16.     Mr. Lankford then turned onto East Broadway Street, which is another name for Highway 64.

17.     Where Mr. Lankford turned onto Highway 64, the roadway is a four-lane paved street with two lanes of traffic going in either direction.

18.     Mr. Lankford did not pass any pedestrians on Highway 64.

19.     Highway 64 turns into a two-lane paved road with a shoulder on each side.

20.     Mr. Lankford drove at speeds in excess of the posted speed limits.

21.     However, Mr. Lankford slowed down when he approached other vehicles on the roadway.

22.     Mr. Lankford did not drive in the oncoming traffic lane when other vehicles were approaching in that lane.

23.     No oncoming vehicles had to alter their path to avoid Mr. Lankford.

24.     The first time Mr. Lankford passed vehicles on Highway 64 by driving in the oncoming traffic lane, he did so when he had the broken yellow line on his side of the road which permitted him to pass legally and there were no oncoming vehicles approaching when he passed.

---

[1] *See* Officer Dube's Dash Camera Footage, attached as Exhibit A and fully incorporated herein.

25.     After passing two vehicles, Mr. Lankford got back into his lane.

26.     Mr. Lankford did not spend more time in the oncoming traffic lane than he needed to pass the vehicles.

27.     Mr. Lankford then slowed down as he approached a vehicle ahead of him in his lane.

28.     That vehicle moved over into the shoulder allowing Mr. Lankford and Officer Dube to pass.

29.     That vehicle was not run off the road or placed in any danger.

30.     Mr. Lankford then approached another vehicle, which was ahead of him in his lane.

31.     Mr. Lankford passed this vehicle by going into the oncoming traffic lane at a point where he had the broken yellow lines and could make a legal pass.

32.     As soon as Mr. Lankford had safely passed the vehicle, he re-entered his lane.

33.     Mr. Lankford did not place anyone in danger when he passed this vehicle as there was no oncoming traffic.

34.     Mr. Lankford then approached two more vehicles, which were ahead of him in his lane.

35.     Mr. Lankford passed both vehicles by entering the oncoming traffic lane when he had a broken yellow line allowing him to legally pass these vehicles.

36.     Mr. Lankford re-entered his lane after safely passing both vehicles.

37.     Mr. Lankford then approached another vehicle ahead of him in his lane.

38.     Mr. Lankford slowed down when as he approached this vehicle and remained behind this vehicle as there was oncoming traffic.

39.    This vehicle then moved to the shoulder allowing Mr. Lankford and Officer Dube to pass.

40.    This vehicle was not run off the road or placed in any danger.

41.    Highway 64 then curved to the right so that the road ahead cannot be seen due to trees on the right side of the road.

42.     Additionally, the trees on the right side of the road cast a shadow onto the roadway ahead of Mr. Lankford.

43.    Plumerville Assistant Chief Albert Duvall (hereinafter referred to as "Defendant Duvall") received a call from Conway County Dispatch (hereinafter referred to as "Dispatch") that Morrilton Police were in a pursuit of a motorcycle and that they were headed toward Plumerville.

44.    Dispatch advised Defendant Duvall that the pursuit was reaching speeds in excess of 100 miles per hour.

45.    Defendant Duvall wrote in his report that he asked dispatch if Morrilton wanted him to attempt to block the roadway.

46.    Defendant Duvall wrote in his report that Dispatch responded "10-4."

47.    Defendant Duvall parked his department issued SUV in a perpendicular manner to the roadway and across both lanes of the two-lane roadway.

48.    Defendant Duvall positioned his SUV in the shade from the trees on the side of the road.

49.    The shade from the trees made it difficult for vehicles and motorcycles, including Mr. Lankford, to see Defendant Duvall's black SUV, as they approached from the East.

50. Defendant Duvall wrote in his report dated 10/12/2018, that "the entire traffic lane was open and unobstructed behind my vehicle."

51. However, his statement is an intentional misrepresentation of what actually happened. Defendant Duvall moved his SUV to block both lanes of traffic and created no means of escape for Mr. Lankford as he approached the turn that Defendant Duvall was parked behind.

52. Defendant Duvall wrote in his report dated 10/12/2018, that as Mr. Lankford approached him "he swerved slightly toward the ditch, then straightened up in the lane and stayed in the center of his lane of travel...It was also quite apparent that Lankford had no intension [sic] avoiding a collision with me."

53. However, Officer Dube wrote in his police report that, "a Plumerville unit was sitting in the middle of the roadway. Lankford attempted to go around, but ended up hitting their patrol unit broadside in the passenger rear door."

54. Officer Dube's dash camera video shows Defendant Duvall actually move his SUV forward into Mr. Lankford's lane – cutting off Mr. Lankford's path in front of the SUV and causing Mr. Lankford to swerve back toward the center of the road where he crashed into Defendant Duvall's SUV since there was also no path to travel behind the SUV.[2]

55. Following the unconstitutional seizure, Officer Dube was having a conversation with Morrilton Police Officer Adam Bryant.[3] Officer Dube told Officer Bryant that Defendant Duvall pulled out in front of Mr. Lankford and that "as soon as he (Mr. Lankford) was coming up he (Mr. Lankford) started to go that way (Officer Dube

---

[2] *See* Exhibit A, 4:00 – 4:04.
[3] *See* Officer Duvall Body Camera Footage, attached as Exhibit B and fully incorporated herein.

motions to the right) and Albert (Defendant Duvall) pulled in front of him (Mr. Lankford)."[4]

56.     Officer Bryant then responded to Officer Dube that Officer Bryant simply asked Defendant Duvall to keep Mr. Lankford from turning North onto State Highway 92 and explained that, "that doesn't mean pull in front of him and block the road to keep him from going."[5]

57.     Officer Dube further explained that "he (Defendant Duvall) pulled in the middle of the road and plowed him (Mr. Lankford)."[6]

58.     Officer Dube then explained that "when we got up here, he (Defendant Duvall) was already sideways and Chris (Lankford) started to go in front of him and he (Defendant Duvall) pulled up.[7]

59.     Thus, when Defendant Duvall stated in his report that "Mr. Lankford swerved toward the ditch and then straightened up in the lane and stayed center," he is describing Mr. Lankford driving toward the pathway in front of Defendant Duvall's SUV and then being forced to change direction when Defendant Duvall moved his SUV forward, cutting off Mr. Lankford's path.

60.     Defendant Duvall materially misrepresented how the crash happened in his report when he stated, "it was also quite apparent that Lankford had no intension [*sic*] avoiding a collision with me, because almost the entire traffic lane was open and unobstructed behind my vehicle," and when Defendant Duvall intentionally omitted the fact that he moved his vehicle in front of Mr. Lankford as Mr. Lankford approached.

---

[4] *See* Exhibit B, 16:50 – 17:06.
[5] *See* Exhibit B, 17:08 – 17:25.
[6] *See* Exhibit B, 21:57 – 22:05.
[7] *See* Exhibit B, 24:16 – 24:23.

61.     Morrilton Assistant Chief Trent Anderson was the Training Officer that reviewed the video of this incident with Officer Dube and Officer Bryant. Assistant Chief Anderson wrote in his report that "We discussed the ending of the pursuit where a Plumerville officer blocked the roadway in front of the pursuit. **I advised both officers that if they found themselves in a situation like that not to block the roadway and to let the motorcycle pass unless it was a deadly force situation.**" (emphasis added).

62.     This was clearly not a deadly force situation.

63.     However, Plumerville Chief of Police Robert Pelsynski wrote in his report, that "At dispatches request, Assistant Chief Albert Duvall blocked the Highway at around the 800 Block...Following the incident I found no wrong doing on Asst Chief Duvall's actions."

64.     Chief Pelsynski was the final policymaker regarding the Plumerville Police Department policies and procedures.

65.     Upon information and belief, the Plumerville Police Department had a policy allowing officers to use their vehicles to create unconstitutional roadblocks by blocking the roadway when a motorcycle is approaching during a pursuit.

66.     Upon information and belief, the Plumerville Police Department trained Plumerville police officers, including Defendant Duvall, to perform unconstitutional roadblocks by blocking the roadway when a motorcycle is approaching during a pursuit.

67.     Upon information and belief, the Plumerville Police Department did not train Plumerville police officers, including Defendant Duvall, that it was inappropriate to perform unconstitutional roadblocks by blocking the roadway when a motorcycle is approaching during a pursuit.

68.     This inadequate training caused Defendant Duvall to perform an unconstitutional roadblock by blocking the roadway with his department issued SUV when Mr. Lankford was approaching on a motorcycle, with the intent and for the purpose of stopping Mr. Lankford.

69.     This inadequate training caused Defendant Duvall to go even further by actually moving his department issued SUV into the pathway of Mr. Lankford who was approaching on a motorcycle, with the intent and for the purpose of stopping Mr. Lankford.

70.     Chief Pelsynski ratified and upheld the Plumerville policy and training regarding roadblocks when he found no wrong doing on Defendant Duvall's actions.

71.     Upon information and belief, Conway County had a policy of encouraging officers to use their vehicles to create unconstitutional roadblocks by blocking the roadway when a motorcycle is approaching during a pursuit.

72.     The County's policy is evidenced by Conway County Dispatch requesting Defendant Duvall to create the unconstitutional roadblock.

73.     When Defendant Duvall decided to block the roadway with his vehicle and then move his vehicle forward into the pathway of Mr. Lankford, he did not possess knowledge that would justify the use of deadly force.

74.     When Defendant Duvall decided to block the roadway with his vehicle and then move his vehicle forward into the pathway of Mr. Lankford, he did not know why the Morrilton Police were pursuing Mr. Lankford.

75.     When Defendant Duvall decided to block the roadway and then move his vehicle forward into the pathway of Mr. Lankford, he did not possess any information that Mr. Lankford was threatening anyone.

76.     When Defendant Duvall decided to block the roadway and then move his vehicle forward into the pathway of Mr. Lankford, he did not possess any information that Mr. Lankford was armed with a weapon.

77.     When Defendant Duvall decided to block the roadway and then move his vehicle forward into the pathway of Mr. Lankford, he did not possess any information that Mr. Lankford was intoxicated.

78.     All that Defendant Duvall knew when he decided to block the roadway and move his vehicle forward into the pathway of Mr. Lankford was that Mr. Lankford was on a motorcycle, which inherently lacked the protections of a car or truck, and was riding at a high rate of speed as he was being pursued by Morrilton officers.

79.     When Defendant Duvall used deadly force to stop Mr. Lankford by moving his vehicle into the pathway of Mr. Lankford, thereby causing the crash and unconstitutional seizure, Mr. Lankford suffered severe and foreseeable injuries.

80.     Mr. Lankford was thrown from his motorcycle and lost consciousness. Mr. Lankford suffered numerous injuries all over his body, including his head, face, chest, and multiple fractures to his right leg. Mr. Lankford's teeth were broken and missing, with some being located in his airway.

81.     Mr. Lankford needed to be care flighted to the nearest hospital due to his severe injuries.

82.      As a result of the injuries, Mr. Lankford's right leg required amputation, leaving Mr. Lankford permanently deformed and disfigured for the rest of his life.

83.     Mr. Lankford now requires the use of a prosthetic leg.

84.     Defendant Duvall's unlawful and unwarranted acts, lack of adequate and appropriate training, and the official customs or policies of Plumerville, Arkansas and

Conway County, Arkansas directly caused Mr. Lankford's severe, permanent, and life-altering injuries.

85.     The Defendants were at all times acting under the color of law.

## IV.
## CAUSES OF ACTION

### Count One

### Excessive Use of Deadly Force
### Pursuant to the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983
### Against Defendant Duvall, in his individual capacity

86.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

87.     Acting under the color of law, Defendant Duvall deprived Mr. Lankford of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of deadly force.

88.     Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

89.     The amount of force used by Defendant Duvall against Mr. Lankford during the seizure that took place on October 10, 2018 as described above was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Mr. Lankford. This deadly force included, specifically but not limited to, when Defendant Duvall used his department issued SUV to block the two lane roadway, following a bend in the roadway where the opportunity to see the roadblock was limited, and then moved his SUV into the pathway of Mr. Lankford's motorcycle so that Mr. Lankford had no means of avoiding a dangerous and unnecessary collision.

90.     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

91.     A reasonable officer would know that this use of deadly force, specifically, using his department issued SUV to block the two lane roadway and then moving it in front of Mr. Lankford, so that Mr. Lankford, who was on a motorcycle, had no means of avoiding a dangerous, deadly, and unnecessary collision, is clearly excessive when done for the purpose of stopping Mr. Lankford when Mr. Lankford was not an immediate threat to others or officers.

92.     A reasonable officer would know that this use of deadly force, specifically, using his department issued SUV to block the two lane roadway and then moving in front of Mr. Lankford, so that Mr. Lankford, who was on a motorcycle, had no means of avoiding a dangerous, deadly, and unnecessary collision, is clearly unreasonable when done for the purpose of stopping Mr. Lankford when Mr. Lankford was not an immediate threat to others or officers.

93.     Stopping a motorcyclist by using a vehicle to create a roadblock is a seizure under the Fourth Amendment. *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989).

94.     Defendant Duvall intended to stop Mr. Lankford by using his vehicle as a physical obstacle – a roadblock. *Id.* at 599.

95.     Mr. Lankford was then stopped by Defendant Duvall's vehicle, which was being used as a physical obstacle – a roadblock. *Id.* at 599.

96.     It was clearly established on October 10, 2018, that creation of a partial roadblock with means of escape would violate a constitutional right of the person seized

as a result of that roadblock. *Hawkins v. City of Farmington*, 189 F.3d 695, 700-01 (8th Cir. 1999).

97.     In this case, Defendant Duvall went even further, by creating a roadblock, with no means of escape when he actually moved his SUV in front of Mr. Lankford cutting off the only path for Mr. Lankford to travel.

98.     Thus, it was clearly established on October 10, 2018, that Defendant Duvall's creation of a roadblock with no means of escape was a violation of Mr. Lankford's constitutional right to be free from unreasonable seizures under the Fourth Amendment.

99.     As a direct and proximate result of the unreasonable deadly force used against him, by way of Defendant Duvall's roadblock with no means of escape, Mr. Lankford suffered great physical harm and conscious pain and suffering, tremendous emotional and psychological anxiety, and permanent disfigurement.

## Count Two

### Municipal Liability
### Pursuant to the Fourth Amendment,
### *Monell v. New York City Department of Social Services,* and 42 U.S.C. 1983
### Against Defendants Plumerville, Arkansas and Conway County, Arkansas

100.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

101.     At all times material hereto, Plumerville, Arkansas through its chief policy maker in law enforcement, Chief of Police Robert Pelsynski, and Conway County, Arkansas through its chief policy makers, the Quorum Court and Sheriff Mike Smith, had a duty to adopt and implement rules and procedures to ensure that their officers use and their dispatchers direct officers to use a reasonable amount and degree of force during pursuits involving suspects on motorcycles. This duty includes, but is not limited to, the

duty to create, adopt, train, and implement rules, regulations, practices, and procedures, which clearly instruct officers and dispatchers as to the appropriate use of force and pursuit tactics, including but not limited to, roadblocks.

102.   The unconstitutional actions and/or omissions of Defendant Duvall, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants Conway County, Arkansas and Plumerville, Arkansas, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by the above named policymakers for Conway County and its Sheriff's Department, and/or the Plumerville, Arkansas and its Police Department:

    a.  To use or tolerate the use of excessive and/or unjustified force;

    b.  To use or tolerate the use of unlawful deadly force;

    c.  To engage in or tolerate unreasonable seizures;

    d.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning pursuit tactics and seizures, including the use of roadblocks and avoiding roadblocks, during the pursuit of suspects on motorcycles;

    e.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning the use of department issued vehicles during the pursuit of suspects on motorcycles;

    f.  To fail to use appropriate and generally accepted law enforcement procedures concerning the use of roadblocks; and

    g.  To fail to use appropriate and generally accepted law enforcement procedures concerning pursuits of suspects on motorcycles.

103. The policymakers for Conway County, Arkansas, including the Quorum Court and Sheriff Mike Smith, and by Plumerville, Arkansas and its Police Department, including Chief of Police Robert Pelsynski knew to a moral certainty that Plumerville police officers would be required to arrest suspects fleeing on motorcycles and that Conway County dispatchers would be required to give directions to officers during pursuits involving motorcycles. Additionally, the policymakers knew that the police officers would be issued vehicles, including SUVs, to accomplish this task of arresting suspects fleeing on motorcycles. Thus, the need to train officers and dispatchers in the constitutional limitations on the use of deadly force is so obvious that a failure to do so is deliberate indifference to constitutional rights. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011).

104. The unconstitutional actions and/or omissions of Defendant Duvall, as described above, were approved, tolerated, and/or ratified by the policymakers for Conway County, Arkansas, including the Quorum Court and Sheriff Mike Smith, and by Plumerville, Arkansas and its Police Department, including Chief of Police Robert Pelsynski. Based off Chief Robert Pelsynski finding no wrong doing by Defendant Duvall after he performed an unconstitutional roadblock and Conway County Dispatch requesting Defendant Duvall perform an unconstitutional roadblock, the policymakers were on actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights by requesting and performing unconstitutional roadblocks. Therefore, Defendants Conway County, Arkansas and Plumerville, Arkansas were deliberately indifferent due to the policymakers choosing to retain these inadequate training programs. *Id.* at 61.

105.    This inadequate training and supervision by Plumerville, Arkansas is bolstered by the fact that the Training Officer for Morrilton, Arkansas advised both Officers Dube and Bryant that if they found themselves in a situation like that not to block the roadway and to let the motorcycle pass unless it was a deadly force situation.

106.    Defendants Conway County, Arkansas and the Plumerville, Arkansas failed to properly train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Duvall, with deliberate indifference to Mr. Lankford's constitutional rights, which were thereby violated as described above.

107.    Plaintiffs are informed and believe and thereon allege that the details of this incident have been revealed to the authorized policymakers within Conway County, Arkansas, Plumerville, Arkansas, and the Plumerville Police Department, and that such policymakers have direct knowledge of the fact that injuries to Mr. Lankford were not justified, but rather represented an unconstitutional display of unreasonable, excessive, and deadly force. Notwithstanding this knowledge, the authorized policymakers within Conway County, Arkansas, Plumerville, Arkansas, and its Police Department, have approved of Defendant Duvall's conduct and decisions in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the injuries of Mr. Lankford. By so doing, the authorized policymakers within Conway County, Arkansas, Plumerville, Arkansas, and its Police Department, have shown affirmative agreement with Defendant Duvall's actions and have ratified the unconstitutional acts of Defendant Duvall.

108.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and

toleration of wrongful conduct by the policymakers for Defendant Conway County, Arkansas and Defendant Plumerville, Arkansas and its Police Department were the moving force and/or a proximate cause of the deprivations of Mr. Lankford's clearly established and well-settled constitutional rights under the Fourth Amendment and in violation of 42 U.S.C. § 1983.

109.    Defendants subjected Mr. Lankford to their wrongful conduct, depriving Mr. Lankford of rights described herein, knowingly, maliciously, with conscious and reckless disregard, and deliberate indifference for whether the rights and safety of Mr. Lankford and others would be violated by their acts and/or omissions.

110.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants Conway County, Arkansas and Plumeville, Arkansas by and through their policymakers, as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney's fees.

**V.**
**<u>Exemplary Damages</u>**
**Against Defendant Duvall**

111.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

112.    When viewed objectively from the standpoint of Defendant Duvall, at the time of the occurrence, Defendant Duvall's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

113.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Duvall, Plaintiff is entitled to recover exemplary damages in an amount within the jurisdictional limits of this Court.

# VI.
## Qualified Immunity

114.    It is anticipated Defendant Duvall will raise, or attempt to raise, a defense of qualified immunity.

115.    In cases involving claims of qualified immunity, often it is appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

116.    However, a reply is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [a] defendant's conduct at the time of the alleged acts." *Id.* at 1434.

117.    Additionally, if "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," the assertion of a qualified immunity defense cannot sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), overruled in part on other grounds by *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

118.    In *Darden v. City of Fort Worth*, the Fifth Circuit reiterated the elements of the qualified-immunity defense are as follows:

> The Supreme Court has mandated a two-step sequence for resolving government officials' qualified immunity claims. We must determine (1) "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right" and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. A right may be clearly established without a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. In

the excessive force context, a constitutional violation is clearly established

if no reasonable officer could believe the act was lawful.

*Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (internal citations omitted).

119.     Acting under the color of law, Defendant Duvall deprived Mr. Lankford of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of deadly force.

120.     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

121.     Mr. Lankford's injuries, including but not limited to the fractures in his right leg that that required the leg to be amputated, were directly and proximately caused by Defendant Duvall's use of excessive deadly force.

122.     A reasonable officer would know that this use of deadly force, specifically, using his department issued SUV to block the two lane roadway and then moving it in front of Mr. Lankford, so that Mr. Lankford, who was on a motorcycle, had no means of avoiding a dangerous, deadly, and unnecessary collision, is <u>clearly excessive</u> when done for the purpose of stopping Mr. Lankford when Mr. Lankford was not an immediate threat to others or officers.

123.     A reasonable officer would know that this use of deadly force, specifically, using his department issued SUV to block the two lane roadway and then moving in front of Mr. Lankford, so that Mr. Lankford, who was on a motorcycle, had no means of avoiding a dangerous, deadly, and unnecessary collision, is <u>clearly unreasonable</u> when

done for the purpose of stopping Mr. Lankford when Mr. Lankford was not an immediate threat to others or officers.

124.    The fact that Defendant Duvall's conduct was clearly excessive and clearly unreasonable is evidenced by Morrilton Assistant Chief Trent Anderson, in his capacity as a Training Officer, reviewing the video of this incident with Officer Dube and Officer Bryant and then writing in his report that "We discussed the ending of the pursuit where a Plumerville officer blocked the roadway in front of the pursuit. I advised both officers that if they found themselves in a situation like that not to block the roadway and to let the motorcycle pass unless it was a deadly force situation."

125.    Plaintiff pleads that it was clearly established law, well before October 10, 2018, that every citizen of the United States has a clearly defined constitutional right to be free from an unlawful seizure by law enforcement officials in accordance with the Fourth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment, and to be free from unlawful excessive force.

126.    More specifically, it was clearly established on October 10, 2018, that creation of a partial roadblock with means of escape would violate a constitutional right of the person seized as a result of that roadblock. *Hawkins v. City of Farmington*, 189 F.3d 695, 700-01 (8th Cir. 1999).

127.    In this case, Defendant Duvall went even further, by creating a roadblock, with no means of escape when he actually moved his SUV in front of Mr. Lankford cutting off the only path for Mr. Lankford to travel.

128.    Thus, it was clearly established on October 10, 2018, that Defendant Duvall's creation of a roadblock with no means of escape was a violation of Mr. Lankford's constitutional right to be free from unreasonable seizures under the Fourth Amendment.

129.    Defendant Duvall's use of deadly force was grossly excessive, unreasonable, and unwarranted. Defendant Duvall is not, therefore, entitled to the protection of qualified immunity.

130.    Any request by Defendant Duvall for a Rule 7(a) reply should be denied.

## VII.
## Damages

131.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

132.    Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant Duvall's use of excessive and unreasonable deadly force against Plaintiff and the aforementioned customs, policies, practices, and procedures; the failures to properly and adequately train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct by the policymakers for Defendant Conway County, Arkansas and its Sheriff's Department and Defendant Plumerville, Arkansas and its Police Department, all which were deliberately indifferent to Plaintiff's safety.

133.    As a result, Plaintiff is entitled to recover all actual damages allowed by law. Plaintiff contends Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to recover punitive damages against Defendant Duvall.

134.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

      a.   Actual damages;

      b.   Physical pain and suffering;

   c.  Mental anguish and emotional distress;

   d.  Disfigurement;

   e.  Loss of quality of life;

   f.  Exemplary and punitive damages;

   g.  Reasonable attorneys' fees;

   h.  Costs of court;

   i.  Prejudgment interest; and

   j.  Post judgment interest.

135. Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required.

136. Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of exemplary damages, reasonable attorney's fees, and costs of court.

137. Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VIII.
## Attorneys' Fees

138. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees and costs under 42 U.S.C. § 1988.

## IX.
## Jury Request

139. Plaintiff respectfully requests a jury trial.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which this court believes Plaintiff is justly entitled.

Respectfully submitted,

SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721
Colorado Bar No. 46582

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF