IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CHRISTOPHER LANKFORD**                                                                              **PLAINTIFF**

vs.                                             **CASE NO. 4:19-cv-619-JM**

**PLUMERVILLE, ARKANSAS,**
**CONWAY COUNTY, ARKANSAS,**
**ALBERT DUVALL, Individually**                                                                **DEFENDANTS**

## ORDER

Pending is the Defendants' Motion for Summary Judgment. (Docket # 13). The motion has been fully briefed by the parties. For the reasons set forth below, the Motion is GRANTED.

On September 5, 2019, the Plaintiff filed this action pursuant to 42 U.S.C. §1983 against Plumerville, Arkansas, Conway County, Arkansas and Albert Duvall alleging that the Defendants violated his Fourth Amendment rights. Specifically, Plaintiff alleges that Duvall used excessive force against him and that the City of Plumerville is liable to him for failing to train and supervise Duvall. Conway County, Arkansas was dismissed by stipulation of dismissal on June 30, 2020.

I.      Facts

On October 10, 2018, while on patrol for the Morrilton Police Department, Officer Taylor Dube (hereinafter, "Officer Dube"), witnessed a passenger on the back of a motorcycle fall off the back of the bike while the bike was running about 50 miles per hour at the intersection of Highway 9 and the I-40 on ramp in Morrilton. The passenger, later identified as Jerry Davis, jumped back up, and got back on the back of the bike. The driver of the motorcycle was later identified as Christopher Lankford. After the passenger got back on the bike,

1

Lankford took off on East Harding Street in Morrilton. Officer Dube attempted to catch up with Lankford. As Officer Dube caught up to Lankford, he turned on his blue lights to check on Mr. Davis. Lankford then pulled up to the stop sign at the intersection of Will and Branch Streets and came to a stop. At that point, Mr. Davis jumped off the back of the bike. Lankford then took off at a high rate of speed continuing onto Will Street. Officer Dube started pursuit. Officer Dube communicated over the radio, "We've got one running." Lankford turned east on Broadway (which becomes Highway 64 outside of the city limits). Officer Dube communicated this location over the radio. The pursuit continued east on Highway 64 out of the Morrilton city limits toward Plumerville. Defendants contend that throughout the pursuit, Lankford weaved in and out of traffic at speeds over 100 mph. Plaintiff disputes this assertion and claims that he passed vehicles only when it was safe. The chase lasted over three minutes. During the pursuit, Lankford ran a stop sign and crossed a sold yellow line twice. At 5:00:20, Officer Dube communicated over the radio that they were, "passing under 9 overpass." At 5:00:40, Officer Dube communicated over the radio that the motorcycle was traveling at 110 miles per hour. At approximately 2:55 on Officer Dube's dash cam, Officer Dube communicated over the radio, "Still running about 110." Plaintiff disputes that his speed exceeded 110 miles per hour but does not dispute that he his speed reached 105 miles per hour.

      As the pursuit approached the Plumerville city limits, Conway County Deputy Danny Coffman (hereinafter, "Deputy Coffman") joined the pursuit. Corporal Adam Bryant was a Morrilton Police Department Corporal on duty on October 10, 2018 (hereinafter, Cpl. Bryant). Cpl. Bryant was the supervisor for Taylor Dube during this incident. Cpl. Bryant was aware that the pursuit was happening and joined the pursuit. During the pursuit, Cpl. Bryant requested assistance from Plumerville. Specifically, Cpl. Bryant communicated to dispatch to "Shut it off

towards the interstate." Cpl. Bryant testified that he considered it dangerous and life threatening for a motorcycle to weave in and out of traffic at excessive speeds.

During the pursuit, Asst. Chief Duvall ("Duvall") was the only Plumerville police officer on duty. Duvall received an urgent call from Conway County Dispatch advising him that Morrilton was in a high-speed pursuit with a motorcycle coming towards Plumerville in excess of 100 miles an hour, and they were requesting Plumerville's assistance. Duvall made his way as fast as he could go safely, with lights and sirens on, to the west side of town to assist. As Duvall got near the 800 block of West Main, Plumerville, he could see blue lights approaching. He then turned his vehicle across the road. It is disputed whether Duvall placed his patrol car in a 45 degree angle allowing room for the Plaintiff to avoid his vehicle or whether he parked his vehicle perpendicular to the road blocking any opportunity for Plaintiff to avoid a collision. Lankford claims that Duvall's vehicle was parked behind a hill and around a curve precluding its visibility. Lankford crashed into Duvall's vehicle. Officer Dube testified that Lankford tried to go around Duvall's police car, but Duvall moved the police car into Lankford's lane of travel causing the collision. Lankford testified that he tried to avoid the collision by going around the vehicle but Duvall moved his vehicle into his pathway causing the collision. Lankford suffered serious bodily injury as a result of the collision including the partial amputation of his right leg.

As a result of this incident, Lankford plead guilty to Fleeing, Class D Felony. Lankford testified that he believed the Morrilton Police Department's pursuit of him during this incident was justified and that the Morrilton Police Department was justified in charging him with Felony Fleeing. Lankford testified that he became aware that the Morrilton Police Department was trying to stop him at the intersection of Will and Grant in Morrilton. Lankford admits that he

was "possibly" intoxicated at the point when the Morrilton Police Department attempted to pull him over, and that he had used alcohol and marijuana that day.

Officer Duvall testified that he received law enforcement certification training at ALETA and through various programs in the area of law enforcement. Duvall also testified that he received standard law enforcement training specific to roadblocks during his training. The Plumerville Police Department's Policy Manual requires all officers to comply with the constitution in performing their duties as law enforcement officers. The Plumerville Policies and Procedures Manual instructs officers to avoid high-speed chases "unless, in the judgment of the officer, the chased presents such a clear menace as to offset the danger of two or more speeding automobiles."

II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. MK-Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

III.   Analysis

A.   Duvall

Plaintiff claims that Duvall used excessive force against him by positioning his vehicle in the path of Plaintiff's motorcycle and then pulling his vehicle in front of him in a manner resulting in a collision in violation of his Fourth and Fourteenth Amendment rights.

The United States Supreme Court has held that "*all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in the original). Therefore, the Court will analyze Plaintiff's excessive force claims under the Fourth Amendment.

5

Government officials, like Duvall, are entitled to qualified immunity for claims against them in their individual capacity "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Cravener v. Shuster*, 885 F.3d 1135, 1138 (8th Cir. 2018) (quoting *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011)). To determine whether an officer is entitled to qualified immunity, the Court must consider two questions: (1) do the facts as shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) was that right clearly established at the time of the defendant's alleged misconduct. *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009). "To deny qualified immunity, the answer to both questions must be yes." *Cravener,* 885 F.3d 1138 (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

To state a plausible claim for a constitutional violation for unreasonable seizure, the Plaintiff must establish that a seizure occurred and that it was unreasonable.  "Factors relevant to assessing the objective reasonableness of force used by officers include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 1138–39 (quoting *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (internal quotations omitted)). The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. at 396. And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397. The reasonableness of an officer's use of force is evaluated by looking at the totality of the circumstances, including "the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Brown*, 574 F.3d at 496. Another factor this Court may take into account in determining the reasonableness of an officer's use of force is the result of the force, that is, the injuries sustained by the person to whom force was applied. *Littrell v. Franklin*, 388 F.3d 578 (8th Cir. 2004) ("In addition to the circumstances surrounding the use of force, we may also consider the result of the force.")

If the Plaintiff shows that his constitutional rights were violated, he must also show that the right was clearly established on the date of the incident. "In order to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "While prior cases need not have expressly determined that the action in question is unlawful, in the light of pre-existing law the unlawfulness must be apparent. Reciting an abstract right at a high level of generality will not suffice." *Id.* (internal citations omitted).

Viewing the evidence and drawing all reasonable inferences in the light most favorable to the Plaintiff, the Court finds that Duvall did not violate Lankford's Fourth Amendment rights. Lankford admits to fleeing from the police and driving at least 105 miles per hour, running a stop sign and crossing the yellow line.  The chase lasted in excess of three minutes.  These facts establish that Lankford was "driving in a fashion as to endanger human life." *Scott v. Harris*, 5550 U.S. 372(2007)(finding that a police officer's attempt to terminate a dangerous high-speed chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment).  Accordingly, even if Duvall pulled his car over in a manner likely to cause the

7

collision and serious injury or death, that use of force did not violate the Fourth Amendment. "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Id. at 373.

City of Plumerville

The City of Plumerville cannot be held liable under 42 U.S.C. § 1983 without an underlying constitutional violation by Duvall. See Whitney v. City of St. Louis, 887 F.3d 857, 861 (8th Cir. 2018) ("[A]bsent a constitutional violation by a city employee, there can be no § 1983 or Monell liability for the City").

IV.   Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 13) is GRANTED.

IT IS SO ORDERED this 15th day of March, 2021.

_____
James M. Moody Jr.
United States District Judge